435 So.2d 344 (1983)
Mary Patricia O'CONNOR, Appellant,
v.
James John O'CONNOR, Appellee.
No. AP-272.
District Court of Appeal of Florida, First District.
July 22, 1983.
*345 Wayne R. Compton, Jacksonville, for appellant.
Clyde W. Davis, Fernandina Beach, for appellee.
THOMPSON, Judge.
The wife appeals a final judgment dissolving the marriage of the parties and distributing the marital assets in accordance with a property settlement agreement previously executed by the parties. The wife contends the trial court should have set aside the property settlement agreement because it was unfair to the wife and because the husband failed to act with candor and in good faith in negotiating the settlement. We affirm.
The trial judge made the following findings: the wife agreed to a property settlement of $10,000 with $4,000 payable immediately, a stipulation agreement was prepared along with an answer and waiver and the wife signed the original stipulation without the husband being present, the wife received the $4,000 agreed upon and has spent most of the money; the wife testified she was frightened of the husband but there was no evidence of any physical abuse or threats during the marriage at anytime including the period of settlement negotiations; there was no fraud, deceit, duress, coercion, or overreaching by the husband in the property settlement negotiations; while the wife's share of the parties' assets was not adequate, the wife possessed a general and approximate knowledge of her husband's property; and although her knowledge was not detailed or exact she had a general knowledge of the character and extent of the husband's property at the time she voluntarily agreed to the disposition.
We agree with the trial court that the property settlement was inadequate. However, a property settlement agreement made by a husband and wife in good faith and free from fraud, deceit, duress, coercion or overreaching should be upheld by the court. As stated by the Supreme Court in Del Vecchio v. Del Vecchio, 143 So.2d 17, 21 (Fla. 1962):
And while the disclosure should be full, fair and open, it need not be minutely detailed nor exact. The test is the adequacy of the knowledge of the woman  she must have had some understanding of her rights and a general and approximate knowledge of his property and resources. The basic issue is concealment, not the absence of disclosure, and the wife may not repudiate if she is not prejudiced by lack of information.
The finding of the trial court that there was no fraud or duress and that the wife had a general and approximate knowledge of the character and extent of her husband's property at the time she voluntarily agreed to the disposition is supported by competent substantial evidence and the court's denial of the wife's motion to set aside the property agreement must be affirmed.
The wife relies on Baker v. Baker, 394 So.2d 465 (Fla. 4th DCA), pet. for rev. denied, 402 So.2d 607 (Fla. 1981), in which the court set aside a property settlement agreement. In Baker the court found that the husband concealed and misrepresented his income and assets and concluded that the property settlement agreement was so tainted with fraud and deception that it was an abuse of discretion to deny the wife's motion for relief. No such factual circumstances exist in this case.
AFFIRMED.
WIGGINTON, J., concurs.
ERVIN, C.J., dissents.
ERVIN, Chief Judge, dissenting.
I respectfully dissent. Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962), as interpreted by Baker v. Baker, 394 So.2d 465 (Fla. 4th DCA 1981), recognizes two methods of attacking a postnuptial agreement: One is directly, by establishing proof of fraud, misstatements, deceit, etc. Such evidence *346 is obviously not present here. The indirect method requires the party seeking to invalidate the agreement to prove that it is unreasonable on its face. If this burden is met, and it apparently was below, since the trial court found the wife's share of the assets to be inadequate,[1] a presumption arises that the husband has concealed his assets, Baker v. Baker, 394 So.2d at 467, and the burden shifts to the defending party to establish the validity of the agreement. Baker, relying on Del Vecchio, permits the husband to meet his burden in two ways: (1) by making a full and frank disclosure to the wife of his worth before she signs the agreement, or, in the absence of such disclosure, (2) by showing that she possessed an approximate knowledge of his property. Id. at 465. The court below made no finding as to whether the husband had made a full and frank disclosure of his worth  indeed, if it had, such a finding would be unsupported by the record  but found rather that the wife had a general and proximate knowledge of the husband's property.
The specific findings of the court, in its order denying the wife's motion to set aside the stipulation agreement, were as follows:
2. By her own testimony, the Court finds that the Wife knew that the Husband owned land in a partnership with his brother. She knew it was mortgaged, and that the partnership was renting a part of it to a Chrysler dealership. She did not know the acreage or value of the tract.
3. The Wife knew that she and the Husband lived in a home worth $100,000.00 in her opinion.
4. The Wife signed the parties' joint income tax return after it was prepared.
5. When the Wife asked the Husband for a divorce, he informed her that he wanted the marital home. He instructed her to write down what she wanted on a paper. There is a conflict in the evidence as to who first proposed the amount of $10,000.00, but the evidence is uncontroverted that the Wife wrote down "Total Settlement $10,000.00 in cash", to be paid in two increments of $4,000.00 and $6,000.00, respectively. The parties drove by separate vehicles to the office of Clyde Davis, Esq., and presented him the document, which is attached as exhibit A to the Wife's deposition.
6. A Stipulation Agreement was prepared, along with an Answer and Waiver. The wife signed the original Stipulation without the Husband being present in the attorney's office.
7. A subsequent Stipulation Agreement was drafted by Mr. Davis [the husband's attorney] and signed by the Wife, changing the child custody provisions, but leaving the property settlement intact.
8. The Wife received the $4,000.00 agreed upon, and has spent most of it.
9. Although the Wife testified she was frightened of the Husband, the Court finds no evidence of any physical abuse or threats during the marriage at any time, including the period in question.
10. There was no fraud, deceit, duress, coercion, or overreaching by the Husband in the property settlement negotiations.
11. While the disposition of the parties' assets was not adequate, the Wife possessed a general and approximate knowledge of her husband's property. Her knowledge was not detailed or exact, but she had a general knowledge of the character and extent of his property at the time she voluntarily agreed to the disposition.
It is clear from the record that the wife had a general knowledge of the type of assets owned by the husband. It is also clear that the wife had no knowledge of the value of the asset which had by far the greatest worth of all other assets owned by the husband. The husband's financial affidavit, executed nearly two months after the settlement agreement, represented the total value of his assets as $303,405.00. Of that amount, $202,605.00 was the value placed by the husband on his one-half interest in a joint venture. Moreover, the wife, as found *347 by the court, had no knowledge of the asset's value  an amount which approximated two-thirds of the value of all the husband's assets.
If the Del Vecchio test requires knowledge of the value of the other spouse's property by the spouse attacking a settlement agreement's validity, surely it cannot be said that the wife in the case at bar had a "general and approximate knowledge of her husband's property," since her knowledge extended only to the general type of property in which the husband had an interest. Del Vecchio, unfortunately, is not altogether clear in its meaning.[2] The opinion states that a valid agreement contemplates, if there is no showing of a fair and reasonable provision for the wife, either "a full and frank disclosure to the wife, before the signing of the agreement, of the husband's worth, or, absent such disclosure, a general and approximate knowledge by her of the prospective husband's property." 143 So.2d at 20 (e.s.). By focusing only on the latter clause, one might logically conclude that a spouse's knowledge of the type of property, in which the other spouse has an interest, satisfies Del Vecchio. I do not think the opinion is fairly susceptible to this interpretation. In my judgment, the wife cannot be said to have executed an informed consent to a distribution of property unless she has also an approximate knowledge of the value of her husband's holdings. This interpretation, I submit, is consistent with other portions of Del Vecchio.
Reading further into the opinion, we learn the term "approximate knowledge" is defined as meaning "`near, `close to' or `approaching.'" 143 So.2d at 20. Can the court be saying that the husband's duty is discharged if the wife possesses knowledge of nearly all the husband's property? I think not. Del Vecchio requires that the wife have "or reasonably should have had a general and approximate knowledge of the character and extent of his property... ." Id. (e.s.) Finally, it states that the knowledge the wife possesses must be "a general and approximate knowledge of his property and resources." Id. at 21 (e.s.).
Neither is the husband's burden satisfied by the wife's failure to make further inquiry once she becomes aware of the type of property her husband possesses or owns. Del Vecchio states: "Unless it be shown that the woman is, in fact, the dominant and moving party the burden is not upon her to inquire, but upon the man to inform." Id. The lower court made no finding that the wife was the dominant party to the agreement, and the evidence certainly would not support such a determination.
Under the circumstances, the burden remained with the husband to show that the wife had a general and approximate knowledge of both the type and value of his property. He failed to meet this burden. Accordingly, I would vacate and set aside those portions of the final judgment of dissolution which incorporate the property settlement agreement, and, as in Baker v. Baker, would set aside the entire agreement and permit the parties to replead and conduct further proceedings.
NOTES
[1] The financial affidavit of the husband, executed nearly two months after the stipulation agreement, reveals him to have a net worth of $145,326.70, and that of the wife none.
[2] See the criticism leveled against Del Vecchio by Strawn, Del Vecchio and Marital Settlement Agreements: Toward a Separate Standard, LVII Fla. Bar J. 486 (1983).